IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

MAURICE L. HALL, )
)
        Plaintiff, )
)
vs. ) Case No. 17-00326-CV-W-ODS
)
THE NUTRO COMPANY, and )
MARS PETCARE US, INC., )
)
        Defendants. )

ORDER AND OPINION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pending is Defendants' Motion for Summary Judgment. Doc. #32. For the following reasons, Defendants' motion is granted.

## I.    BACKGROUND[1]

Plaintiff Maurice Hall was employed by Defendant The Nutro Company ("Nutro") from April 4, 2011, through May 28, 2015. Nutro was a division of Defendant Mars Petcare US, Inc. ("Mars"), until Nutro merged with Mars on January 1, 2016.[2] Nutro produces dog and cat treats in Kansas City, Missouri. Both Nutro's and Mars's policies apply to the Kansas City employees. A few of those policies are relevant to this matter. Mars's Family and Medical Leave Act ("FMLA") policy sets forth eligibility requirements, and states an employee, upon return from FMLA leave, "must be restored to his or her original job, or to an equivalent job with equivalent pay, benefits, and other employment terms and conditions." Doc. #33-2, at 10-16. Nutro's Incident Investigation and Reporting Policy and Nutro's Occupational Injury and Illness Policy require employees immediately report work-related injuries to management. *Id.* at 18, 29. Managers are responsible for filing an initial report for any work-related injury. *Id.* at 19, 29.

---

[1] Unless otherwise noted, the facts in this section are uncontroverted by the parties or were obtained from materials submitted by the parties.
[2] Unless the specific entity was identified in the materials provided by the parties, the Court will refer to Defendants collectively.

From April 2011 through February 2012, Hall worked in the Greenies[3] section in the role of utility operator on the third shift (11:00 p.m. to 7:00 a.m.). In February 2012, Hall transferred to the Pill Pockets[4] section where he worked as a packaging operator on the third shift. In June 2014, Hall moved to the first shift (7:00 a.m. to 3:30 p.m.) in the Pill Pockets section as a batching operator.

On February 15, 2015, Hall sustained a hip injury playing basketball with coworkers on a league team. Hall did not file a worker's compensation claim for the injury, and did not report the injury as work-related. Hall submitted documentation related to the injury to Nutro's Regional Nurse Case Manager Jonette Penton, and was approved for FMLA leave. Hall was on FMLA leave and off work until April 27, 2015.

At the time of Hall's basketball injury, six batching operators (including Hall) worked in the Pill Pockets section, and the operators were evenly divided among three shifts. According to Hall, the other Pill Pockets batching operators had more experience in batching and/or had longer tenure with Defendants than Hall did. Doc. #33-1, at 8. In early 2015 but no later than February 23, 2015,[5] management discussed shift changes in the Pill Pockets section for production reasons. Employees in the Pill Pockets section were invited to an off-site meeting in late March 2015 to discuss shift changes.[6] Hall was not invited to the meeting, and did not learn about the meeting until after it was held.

Effective April 22, 2015, the Pill Pockets section switched from three 8-hour shifts over five days to two 12-hour shifts (6:00 a.m. to 6:30 p.m., and 6:00 p.m. to 6:30 a.m.) over four days. The shift changes were temporary, and based on production schedule.[7] Hall was on FMLA leave when the shifts changed, but was informed he would be working from 6:00 p.m. to 6:30 a.m. when he returned. Hall told his manager, Jim Garlich, he could not

---

[3] Greenies are dog treats produced at the Kansas City facility.
[4] Pill Pockets are cat treats produced at the Kansas City facility.
[5] This timeframe is uncontroverted by the parties.
[6] It is undisputed that managers did not attend the March 2015 meeting. But what occurred during the meeting is unclear. Defendants proffer the affidavit of now-Regional Associate Relations Manager, Idol Rashid, who states the employees at the meeting "collaborated to place themselves on the 12-hour shifts based upon experience, time in role, and training capabilities." Doc. #33-2, at 6. But Rashid does not aver he attended the meeting, and does not establish he has personal knowledge of what occurred at the meeting. Because Rashid's statement about what occurred during the meeting is not made based upon personal knowledge, the Court cannot consider that statement. Fed. R. Civ. P. 56(c)(4).
[7] Production did not increase as expected, and the Pill Pockets section returned to three 8-hour shifts in August 2015.

be at work at 6:00 p.m. due to his childcare situation.  Garlich told Hall he could report to work at 10:00 p.m., allowing Hall to find childcare.  Garlich informed Hall that he could use vacation time for the hours missed, and also said they would "work something out."

Hall returned to work on April 27, 2015.  Although his shift changed, Hall was restored to the same job with the same duties, and his pay and benefits remained unchanged.  On his first day back, Hall claims he injured his hip.  According to Hall, he informed his supervisor, C.J. Bauer, that he "lifted up on the hopper and… stepped down and…injured [his] hip."  Doc. #33-1, at 5, 13-14.  Bauer, according to Hall, told Hall to go home, and said she "would take care of the process, the paperwork…and would let Jim Garlich know."  *Id.*  According to Bauer, she informed Hall "he could leave work early because he was hurt."  Doc. #33-3, at 2.  Hall left his shift around 3:00 a.m.  Bauer did not send Hall to the hospital.  According to Hall, he informed Regional Nurse Case Manager Penton about the work injury, but Penton did not tell him to do anything in response.  Doc. #33-1, at 14.  Penton, on the other hand, maintains Hall called her on April 28, 2015, saying he was in pain, but did not mention a work injury.  Doc. #33-2, at 45.  Hall returned to work on May 4, 2015, but was restricted to light duty.  Upon his return, no one asked Hall about the injury.  Hall never filed a worker's compensation claim for the alleged injury, and did not receive worker's compensation benefits.  Hall's time off from work was later approved for FMLA leave.

As of May 4, 2015, Hall had 80 hours of vacation time.  On May 5, May 6, and May 7, 2015, Hall logged vacation time in the timekeeping system for hours missed due to childcare issues.  Based upon his discussion(s) with Garlich, Hall thought he was allowed to use his 80 hours of vacation time to arrive at work late.  According to Hall, approximately two weeks after returning to work, Garlich informed Hall that his vacation was running low, and they would start using emergency vacation.  Doc. #33-1, at 10, 11.  After this conversation, Hall understood he would begin using emergency vacation.  *Id.*, at 11.  But, sometime between May 7 and May 21, 2015, Garlich changed Hall's vacation time entries on May 4, May 5, May 6, and May 7 to emergency vacation time.  Doc. #33-1, at 13, 32-33.

On May 21, 2015, Hall was given a document entitled "final written warning," which listed six emergency occurrences and the accumulation of nine attendance points.  Hall was informed "[a]ny additional attendance violation may result in your termination…."  Doc. #33-

3

1, at 25.[8]  Attached to the warning were (1) a memorandum from Garlich to Hall dated May 20, 2015, (2) a verbal warning to Hall dated May 20, 2015, and (3) a written warning to Hall dated May 20, 2015.  According to Hall, he did not receive these three documents until he was discharged.  Doc. #33-1, at 20.  On May 28, 2015, Hall's employment was terminated because, according to Defendants, Hall accumulated 9.75 attendance points.

On April 28, 2017, Hall filed this lawsuit alleging FMLA interference and retaliation (Count I), retaliation in violation of section 287.780 of the Missouri Revised Statutes (Count II), and infliction of emotional distress (Count III).  Doc. #1.  The Court previously dismissed Hall's infliction of emotional distress claim.  Doc. #16.  In March 2018, Defendants moved for summary judgment on Hall's remaining claims.  Doc. #32.  In response to Defendants' motion, Hall conceded he was not bringing an FMLA retaliation claim.  Doc. #38, at 36.  The Court must now decide whether Defendants are entitled to summary judgment on Hall's FMLA interference claim and/or worker's compensation retaliation claim.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986).  "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted).  The Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588-89 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984).  "[A] nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial."  *Nationwide Prop. & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378, 382 (8th Cir. 2016) (citations omitted).

---

[8] Employees are allowed five emergency occurrences.  The attendance policy permits up to eight attendance incidents (or points).

4

In response to Defendants' summary judgment motion, Hall set forth additional facts he claims are uncontroverted. Four of Hall's purported facts (*i.e.*, 117, 118, 119, and 120) were supported solely by allegations in the Complaint. Doc. #38, at 29.[9] A party claiming a fact is undisputed must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations…, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); L.R. 56.1(b)(1). A party "cannot simply rely on assertions in the pleadings to survive a motion for summary judgment." *Krein v. DBA Corp.*, 327 F.3d 723, 726 (8th Cir. 2003). These facts are only supported by allegations, and are not supported by anything in the record; thus, they cannot and will not be considered.

### III. DISCUSSION
#### A. FMLA Interference Claim

Hall's FMLA interference claim is based upon Hall's return from FMLA leave. Hall contends "Defendant[s] did not return Plaintiff to his pre-FMLA schedule, and accordingly, Plaintiff has presented evidence that the position to which he was assigned upon his return to work was not his original position or an equivalent position…." Doc. #38, at 34. Hall maintains he should have been assigned to the day shift. *Id.* at 34, 35. Defendants argue they are entitled to summary judgment because Hall was restored to an equivalent position.

An employer is prohibited from interfering with an employee's exercise of FMLA rights. *Stallings v. Hussmann Corp.,* 447 F.3d 1041, 1050 (8th Cir. 2006) (citing 29 U.S.C. § 2615(a)(1)). But "an employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights." *Bacon v. Hennepin Cty. Med. Ctr.*, 550 F.3d 711, 715 (8th Cir. 2008) (citations omitted).

Relevant to this case, an employee, upon return from FMLA leave, must be "restored…to the position of employment held by the employee when the leave commenced," or "restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1) (2008). An equivalent position is "virtually identical to the employee's former position in

---

[9] Hall also set forth one purported fact (*i.e.*, 121) for which he provided no citation to the record. The Court addresses that purported fact *infra*, section III(B).

terms of pay, benefits and working conditions, including privileges, perquisites, and status." 29 C.F.R. § 825.215(a) (2013). Equivalent terms and conditions are "substantially similar duties, conditions, responsibilities, privileges and status as the employee's original position." 29 C.F.R. § 825.215(e). An "employee is ordinarily entitled to return to the same shift or the same or an equivalent work schedule." 29 C.F.R. § 825.215(e)(2).

But an employee "does not have unlimited restoration rights" when returning from FMLA leave. *Throneberry v. McGehee Desha Cty. Hosp.*, 403 F.3d 972, 978 (8th Cir. 2005). He is not entitled to "any right, benefit, or position of employment other than the right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B). And he "has no greater right to…other benefits and conditions of employment than if the employee had been continuously employed during the FMLA period." 29 C.F.R. § 825.216.

When Hall began his FMLA leave on February 15, 2015, the Pill Pockets section was running three 8-hour shifts per day. While he was on FMLA leave, the shifts changed to two 12-hour shifts per day. Upon his return to work, Hall was restored to the same job with the same duties, and his pay and benefits remained the same. But the 8-hour shift he previously worked no longer existed. Thus, Hall was not (and could not be) returned to the same shift. Instead, Hall was assigned to one of the two 12-hour shifts. Hall argues he was not restored to an equivalent position because "the day shift was still available and [he] could and should have been assigned to the day shift." Doc. #38, at 34.

Hall's interference claim hinges on whether being restored to the same position with the same duties and same pay and benefits but placed on a different shift constitutes an equivalent position. At least two district courts in the Eighth Circuit have faced a similar question, and found a shift change (with no change in pay or benefits) does not constitute FMLA interference. The Southern District of Iowa concluded an employee was returned to an equivalent position when his benefits, wages, and job duties remain unchanged, but he was transferred from the night shift to the day shift. *McBurney v. Stew Hansen's Dodge City*, 311 F. Supp. 2d 811, 815 (S.D. Iowa 2004) (citations omitted), *aff'd*, 398 F.3d 998 (8th Cir. 2005). The Northern District of Iowa concluded likewise. *Schaack v. ABCM Corp.*, No. 07-CV-3080, 2009 WL 1269907, at *5 (N.D. Iowa May 5, 2009) (citation omitted) (finding the plaintiff was returned to an equivalent position upon return from FMLA leave even

6

though the plaintiff, whose pay remained unchanged, was "scheduled to work a few shifts at times other than her usual…shift.") (citations omitted). In a similar vein, the Eighth Circuit has concluded a shift change (and nothing more) occurring after an employee exercises FMLA rights does not constitute an adverse employment action, and thus, does not support a claim for FMLA retaliation. *Harris v. Emergency Providers, Inc.*, 51 F. App'x 600, 601 (8th Cir. 2002) (citation omitted).

While Hall may have wanted to work on the "day shift," he fails to show he would have been entitled to work on the day shift had he not taken FMLA leave. 29 U.S.C. § 2614(a)(3)(B); 29 C.F.R. § 825.216. Hall ignores the fact that the same number of operators were working in the Pill Pockets when there were three shifts per day, and when there were two shifts per day. And instead of dividing six operators into three shifts, the six operators were split into two shifts. Accordingly, every operator's shift changed on April 22, 2015, and each worked different hours than he/she previously did. Also, Hall seemingly forgets his admission that the other operators had more tenure or batching experience than he had. And he does not explain how his shorter tenure or lesser experience would allow him to be on day shift when others had more tenure and experience. Moreover, Hall cites no legal authority supporting his argument that being returned to the same position with the same responsibilities and unchanged pay and benefits with only a shift change – particularly when shifts were restructured while on FMLA leave – is not an equivalent position, and thus, constitutes FMLA interference. For all of these reasons, Hall fails to establish a claim for FMLA interference, entitling Defendants to summary judgment on this claim.

Even if Hall could establish a claim for FMLA interference, Hall does not dispute the shift changes would have occurred regardless of whether he took FMLA leave. Due to the shift restructuring, Hall's shift would have changed even if he had not taken FMLA leave. He would have been assigned to one of the two 12-hour shifts, regardless of taking FMLA leave. *See Joyce v. Office of Architect of Capitol*, 106 F. Supp. 3d 163, 178-79 (D. D.C. 2015) (finding the employer was entitled to summary judgment because the employer would have changed the employee's shift regardless of the employee's FMLA leave). Because Defendants would have made the same decision to place Hall on one of the 12-hour shifts, regardless of his FMLA leave, Defendants did not interfere with Hall's FMLA

7

rights, and cannot be liable for a claim of FMLA interference. *Bacon*, 550 F.3d at 715. For all this additional reason, Defendants' motion for summary judgment is granted.

### B. Worker's Compensation Retaliation Claim

Defendants argue they are entitled to summary judgment because Hall did not exercise a right under the worker's compensation law, and even if he had, he cannot show that action was a contributing factor in Defendants' decision to discipline or discharge Hall. Hall argues he exercised his rights under the worker's compensation law by reporting his work injury to his supervisor, and his exercise of those rights was a contributing factor in Defendants' decision to discipline and/or discharge him. Doc. #38, at 38-39.

To make a submissible case for retaliatory discharge under section 287.780[10] of the Missouri Revised Statutes, an employee must demonstrate (1) he was employed by the defendant before injury, (2) he exercised a right granted by Chapter 287, (3) his employer discharged or discriminated against him, and (4) the exercise of rights under Chapter 287 was a contributing factor to his discharge or the employer's discrimination. *Morgan v. Plaza Motor Co.*, 166 F. Supp. 3d 969, 974 (E.D. Mo. 2015) (citing *Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 382-84 (Mo. banc 2014)).

First, Hall, without citing legal authority, argues becoming injured at work, and reporting that injury to a supervisor constitutes an exercise of rights under the worker's compensation law. Doc. #38, at 38. While the filing of a formal claim for worker's compensation benefits is not necessary to establish an exercise of rights under section 287.780, the fact that a work-injury occurred is not the exercise of a right under the worker's compensation law. *Demi v. Sheehan Pipeline Constr.*, 452 S.W.3d 211, 216-17 (Mo. Ct. App. 2014) (citations omitted); *St. Lawrence v. Trans World Airlines*, 8 S.W.3d 143, 150 (Mo. Ct. App. 1999); *Welker v. Panera Bread Co.*, No. 10CV2192, 2011 WL 1327427, at *2 (E.D. Mo. Apr. 6, 2011) (dismissing the plaintiff's worker's compensation retaliation claim because the injury was not an exercise of a right). Further, "reporting an injury-causing event is not exercising a right" under the worker's compensation statute. *Jones v. United Parcel Serv., Inc.*, No. 11-CV-6026, 2012 WL 4888464, at *7 (W.D. Mo. Oct. 15, 2012).

---

[10] The parties note section 287.780 was amended effective August 28, 2017, but they agree the amendment does not apply in this matter. Doc. #33, at 29 n.2; Doc. #38, at 37.

8

To exercise a right under the worker's compensation law, courts have found an employee must demonstrate something more than the work injury occurring and the employee's report of the injury to a supervisor. By way of example, courts have found an employee exercised a right under the worker's compensation law when an employee availed himself of medical and hospital benefits under the worker's compensation law, an employee received medical treatment and remaining off work pending a medical release, and an employer knew the employee hired an attorney to process a worker's compensation claim. *Demi*, 452 S.W.3d at 216-17 (collecting cases); *Hansome v. Nw. Cooperage Co.*, 679 S.W.2d 273, 275-76 (Mo. banc. 1984), *overruled on other grounds by Templemire*, 433 S.W.3d at 373, 378-80.

When viewing the evidence in the light most favorable to Hall, as the Court must do, Hall suffered an injury at work on April 28, 2015, and he reported his injury to his supervisor and the Regional Nurse Case Manager. Hall did not file a claim for worker's compensation benefits. Hall points to nothing in the record showing any other interactions he had with Defendants about the injury. Further, while Hall received treatment from his personal physician for the injury, he did not seek medical treatment by one of Defendants' approved physicians. Unfortunately, Hall does not cite to – and the Court has not found – a case wherein the facts before this Court would constitute the exercise of a right under the worker's compensation law. Based upon the cases discussed above, the Court finds Hall has not established the occurrence of a work injury coupled with reporting an injury to a supervisor and a nurse constitutes an exercise of a right under the worker's compensation law. For this reason alone, Defendants' motion for summary judgment on Hall's worker's compensation retaliation claim is granted.

Even if the Court were to find Hall exercised a right under the worker's compensation law, the result would be the same. Hall has not shown the exercise of a right was a contributing factor in Defendants' decision to discipline and/or discharge him. To establish this element, Hall argues he has presented evidence that Defendants' safety coordinator's job was in jeopardy if additional work injuries occurred. Doc. #38, at 38. Hall's evidence is based upon a purported fact for which he provided no citation to the record. Doc. #38, at 30, ¶ 121. Because Hall did not cite to anything in the record, the fact is unsupported, and cannot be considered. Fed. R. Civ. P. 56(c)(1)(A); *see also* L.R. 56.1(b)(2).

Nonetheless, if the Court were to consider Hall's argument about the safety coordinator potentially losing her job if another injury occurred, he still has not established

9

his exercise of a right under the worker's compensation law was a contributing factor in his discipline or discharge. Hall points to nothing in the record that would permit a finding that his exercise of rights was a contributing factor in Defendants' decisions to discipline and/or discharge him. For this additional reason, Defendants' motion for summary judgment on Hall's worker's compensation retaliation claim is granted.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted with regard to Hall's claims of FMLA interference and worker's compensation retaliation. Pursuant to Hall's concession that he is no longer bringing a claim of FMLA retaliation, that claim is dismissed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: June 28, 2018
UNITED STATES DISTRICT COURT